IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID J. KILLIAN | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 16-2874 |
| | : | |
| CHRISTOPHER RICCHETTI | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                         **October 31, 2016**

Businesspersons looking to help develop each other's real estate investment usually reach some form of written contract. As with any businessperson, they hope to avoid surprise and limit litigation through agreed terms. Often, as shown today, friends enter into email exchanges with high hopes but when the realities do not meet the expectations expressed by one friend in emails, courts must review whether the friends actually reached a meeting of the minds on any enforceable term. Even with a meeting of the minds, the failure to satisfy a condition precedent will excuse performance by the other party unless caused by the allegedly breaching party. The law allows, even absent an enforceable meeting of the minds, a party who lost money in reliance on a specific promise, to recover lost money as a matter of equity outside of the contract. In the accompanying Order, we grant one friend's motion for summary judgment on a breach of contract claim as there is no enforceable contract as a matter of law. We also deny his motion for summary judgment on his former friend's claims of promissory estoppel, unjust enrichment and *quantum meruit* when we find several genuine issues of material fact concerning the promises, reliance and damages.

## I. Undisputed facts

David J. Killian and Christopher Ricchetti developed a friendship in 2011 based on their shared interest in real estate development.[1] Killian owned a condo on Pine Street in Philadelphia and Ricchetti owned vacant land on 2nd and Brown Street in Philadelphia.[2] From September 2011 into early 2012, Killian and Ricchetti exchanged ideas about co-developing Ricchetti's 2nd and Brown Street property and re-financing and selling Killian's Pine Street condo.[3]

In September 2011, Ricchetti proposed partnering with Killian to develop Ricchetti's 2nd and Brown Street. Ricchetti suggested he could buy a senior mortgage and foreclose on Killian's Pine Street condo to provide Killian cash to invest in 2nd and Brown Street.[4] Killian accepted Ricchetti's proposals, thereafter; Ricchetti told Killian he had no longer interest at that time in the Pine Street condo deal.[5] After the September 11, 2011 exchange, throughout September, October, and November 2011, Ricchetti and Killian discussed plans to co-develop Ricchetti's 2nd and Brown Street.[6] In December 2011, Ricchetti referred to Killian as his partner in an email to a commercial real estate broker.[7]

### *The alleged contract*

On February 6, 2012, Ricchetti e-mailed Killian with possible terms regarding their two properties, again involving Killian's Pine Street property. For the Pine Street property, Ricchetti's email is not clear as to details but he suggests he will purchase a mortgage on the Pine Street condo and Killian will pay Ricchetti back for the mortgage and fees. The Pine Street condo will be placed on the market and $200,000 from the sale will be paid to Ricchetti.[8] For 2nd and Brown Street, Ricchetti suggests he and Killian will be "50 percent dual ownership" and form a limited liability company. Ricchetti also suggests Ricchetti and Killian will form a "50 percent partnership together."[9] Ricchetti then discusses the need for two $200,000 construction

2

loans for the beginning and end of construction.[10] Ricchetti suggests all things related to 2nd and Brown Street and all costs will be "50%...."[11] Ricchetti ends his e-mail "there are more little details…it's a start."[12]

On February 8, 2012, Killian responds to Ricchetti's e-mail summarizing Ricchetti's terms and adding additional terms. Killian opens the e-mail, "Take a look, did I miss anything??? Did we have more scenario's??? I can't recall."[13] As to the Pine Street condo, Killian adds the terms: (1) Lauren Killian will not contest any foreclosure proceeding and (2) Killian will use the Pine Street condo sale proceeds to pay off Ricchetti's mortgage on the Pine Street condo and Killian will give Ricchetti an additional $200,000 "towards the purchase price of the land associated with the the [sic] development of a 11 unit mixed use apartment building, located at 2nd & Brown, in Philadelphia.[14] As to 2nd and Brown Street, Killian adds terms: (1) Killian will handle zoning approvals and architectural plan; (2) Ricchetti will jointly and/or severally get a construction mortgage for the property; (3) Killian contributes "Construction Management services/consulting…valued at 15% of the total project cost"; (4) project costs will be "shred and cost"; (5) if the partnership does not purchase 2nd and Brown Street from Ricchetti, Ricchetti will reimburse Killian for all costs related to obtaining zoning approvals; (6) Ricchetti will compensate Killian for the value added to 2nd and Brown Street by rezoning; (7) Ricchetti agrees Prudential Savings Bank has an independent appraisal which values 2nd and Brown Street at $465,000, and ; (7) Killian adds a fraud/embezzlement clause.[15] Ricchetti never directly responds to Killian's February 8, 2012 e-mail terms.

On February 19, 2012, Ricchetti initiated a different email chain by asking Killian four questions regarding the Pine Street condo mortgage regarding how the loan will be split, the

value of the mortgage, legal review of the mortgage and the timing of the Pine Street condo sale.[16]

Ricchetti proposes, "when the Pine is clear title we form an LLC with an equal partnership of 50% and [w]e do so only the develop that property as planned with 10 or more units, 6 floors and retail bottom. We both agree that we have no there [sic] plans but to develop that property this year, and cost are equal for us, as well as profit when we agree to sell. We both have rights to see and obtain all cost information records related to 2nd and [B]rown. If one of us is found and proven stealing from the other or the business the[y] [l]ose their half of the property."[17] On February 20, 2012, Killian responds "OF COURSE" to Ricchetti's proposal.[18]

Killian also answers Ricchetti's questions about the Pine Street condo mortgage and tells Ricchetti he is waiting for Prudential's attorney, the lender for Pine Street, to get back to him so they can close on the Pine Street condo mortgage.[19]

### *Actions taken in reliance on contract*

Killian and Ricchetti take actions based on their negotiations. Killian forwarded the February 6th and 8th e-mails to his attorney.[20] Killian re-forwarded the February 6th and 8th e-mails to his attorney's partner in response to a request for "terms and conditions for the deal you made with Chris re developing his Northern Liberties property."[21] Killian stated "below are the terms of the agreement between Chris Ricchetti (New Market LLC) and Blackcomb Group, LLC."[22] Killian formed a limited liability company called the Blackcomb Group LLC with his wife as the sole member.[23] Killian also acquires a proposal for concrete work for 2nd and Brown Street in April 2012.[24]

On February 16, 2012, Killian sent Ricchetti an update regarding the Philadelphia Streets Department approving a curb cut and discussing the zoning code parking requirements for 2nd

and Brown Street.[25] On March 5, 2012, Ricchetti's New Market LLC signed a Purchase and Sale Agreement with Prudential for the Pine Street condo.[26] New Market paid $100,000 to Prudential and Prudential assigned its mortgage on the Pine Street condo.[27] Ricchetti instituted foreclosure proceedings against the Pine Street condo and Killian's wife Lauren did not contest them as agreed. Ricchetti never successfully foreclosed on the Pine Street condo because Wells Fargo was "adamant" in asserting its lien position and Ricchetti decided not to pursue a legal battle.[28]

Ricchetti referred to Killian as his partner and discussed the 2nd and Brown Street project plans with Killian. In March 2012, Ricchetti signed an email to Killian "Ricchetti partner at large djk."[29] On March 28, 2012, Ricchetti forwarded zoning permit information to Killian and comments "Jackpot Mole :). Our info for support will come Monday."[30] Killian responds expressing doubts about the zoning board and Ricchetti answers "Yes but that's still a positive for us."[31]

Killian and Ricchetti gave others the impression they were partners. On April 2, 2012, Ricchetti retained an attorney to assist with rezoning 2nd and Brown Street.[32] While Ricchetti is the only party on the representation letter, the attorney who handled the zoning permit believed they were partners, sent e-mail questions to both Killian and Ricchetti, and met with both Killian and Ricchetti.[33]

Ricchetti and Killian also retained an architect for 2nd and Brown Street. On April 18, 2012, Killian and the architect exchanged e-mails about the architect's invoices for work on 2nd and Brown Street and Ricchetti is not copied on the e-mail.[34] On April 26, 2012, Ricchetti forwards Killian and the architect an email regarding zoning permits.[35] Ricchetti comments "Here it is boys....Let's give them what they want...we can do it" and the architect replies "It's great to be on a winning team."[36]

On May 2, 2012, Killian emailed Philadelphia City Councilman Mark Squilla detailing a civic meeting he attended to gain support for 2nd and Brown Street. Killian represents this meeting is the 5th time since November and "Chris Ricchetti is my partner and applicant, we're really hoping to move this project forward."[37] On June 19, 2012, Ricchetti forwards an e-mail to Killian regarding picking up construction plans from the City of Philadelphia. Ricchetti states "I could not have done it without you and Chris."[38]

On April 5, 2012, Killian acquired a proposal for architectural and engineering services for 2nd and Brown Street.[39] On May 1, 2012, Killian acquired a proposal for windows for 2nd and Brown Street.[40] On May 16, 2012, Killian informed Ricchetti he sent a package to Starbucks broker about opening a shop at 2nd and Brown Street.[41]

### *Zoning approval and sale of 2nd and Brown*

On May 2, 2012, the Zoning Board approved an application for 2nd and Brown to be used as a 6-story commercial/residential mixed building. On July 30, 2013, Ricchetti sold 2nd and Brown as a vacant lot for $740,000.[42] Ricchetti did not give Killian any money from the sale of 2nd and Brown Street. Killian sues Ricchetti alleging damages in excess of $50,000.

### II. Analysis

Ricchetti seeks summary judgment.[43] Ricchetti argues we should grant summary judgment on for breach of contract because no contract existed as a matter of law. Because we find the February 6th and February 8th e-mails do not form a contract, as a matter of law, and the February 19th and February 20th e-mails form a contract based on a condition precedent which never matures, we grant summary judgment in Ricchetti's favor on Killian's breach of contract claim.

Ricchetti also seeks summary judgment on Killian's promissory estoppel claim because Ricchetti never made promises for Killian to rely on. Ricchetti seeks summary judgment on Killian's unjust enrichment and *quantum meruit* claims arguing Ricchetti did not ask Killian to do anything for 2nd and Brown Street and Killian did not confer any benefits to 2nd and Brown Street. As we find genuine issues of material fact regarding promises made between Ricchetti and Killian, we deny summary judgment as to the promissory estoppel, unjust enrichment, and *quantum meruit* claims and those claims will be decided following trial.

### A. Summary judgment is proper dismissing Killian's contract claims.

The e-mails exchanged between Killian and Ricchetti on February 6th and February 8th do not form a contract because material terms changed between offer and counteroffer. Killian and Ricchetti negotiated back-in-forth in these e-mails but they never reach agreement on a single set of material terms. The e-mails exchanged between Killian and Ricchetti on February 19th and February 20th do form a contract but it could not be breached, as a matter of law, because the required condition never occurred.

Under Pennsylvania law, "the question of whether an undisputed set of facts establishes a contract is a matter of law."[44] Where the parties' discussions are more informal and they plan, but never execute, a formal contract "it is an essential element of the informal contract that the minds of the parties should meet upon all the terms, as well as the subject matter of the contract; and, if anything is left open for future consideration, the informal agreement cannot form the basis of a binding contract."[45] "It is hornbook law that evidence of preliminary negotiations or an agreement to enter into a binding contract in the future does not alone constitute a contract."[46]

### 1. The February 6th and February 8th e-mails are not a contract.

If we consider Ricchetti's February 6, 2012 e-mail as an offer to Killian containing terms regarding their two properties, Killian's February 8, 2012 response is not an unconditional acceptance but equals a counteroffer because Killian adds additional terms not included in Ricchetti's February 6, 2012 initial offer.

Killian's counteroffer adds two new terms regarding his Pine Street condo: (1) Killian's wife Lauren will not contest any foreclosure proceeding by Ricchetti, and; (2) Killian will use the Pine Street condo sale proceeds to pay off Ricchetti's mortgage on the Pine Street condo and Killian will give Ricchetti an additional $200,000 for the 2nd and Brown Street purchase price.[47]

Killian also adds seven additional terms regarding 2nd and Brown Street: (1) Killian will handle zoning approvals and architectural plan; (2) Ricchetti will jointly and/or severally get a construction mortgage for the property; (3) Killian will contribute "Construction Management services/consulting…valued at 15% of the total project cost"; (4) project costs will be "shred and cost"; (5) if the partnership does not purchase 2nd and Brown from Ricchetti, Ricchetti will reimburse Killian for all costs related to obtaining zoning approvals; (6) Ricchetti will compensate Killian for the value added to 2nd and Brown Street by rezoning; (7) Ricchetti will agree Prudential Savings Bank has an independent appraisal which values 2nd and Brown Street at $465,000; and, (7) Killian adds a fraud/embezzlement clause.[48]

Killian's February 8, 2012 e-mail response to Ricchetti is a counteroffer because "a reply to an offer which purports to accept it, but changes the conditions of the offer, is not an acceptance but is a counter-offer, having the effect of terminating the original offer."[49] Ricchetti never accepts Killian's February 8, 2012 counteroffer. There is no contract.

Killian's comments in the February 8, 2012 e-mail confirm he did not issue a counteroffer. Killian asks Ricchetti to "Take a look, did I miss anything??? Did we have more scenario's??? I can't recall."[50] These questions evidence Killian and Ricchetti remain in negotiations and "mere negotiations and may be terminated at any time by either party while they are pending."[51]

### 2. The February 19th and February 20th e-mails evidence a meeting of the minds but, absent satisfying a condition precedent, there is no breach of contract.

The February 19th and February 20th e-mails evidence a "meeting of the minds" but because the contract is based on a condition precedent which never occurs, the contract never matures. "It is well settled that if a contract contains a condition precedent, the condition precedent must occur before a duty to perform under the contract arises."[52]

On February 19, 2012, Ricchetti e-mailed Killian asking four questions regarding the Pine Street condo mortgage regarding how the loan will be split, the value of the mortgage, legal review of the mortgage and the timing of the Pine Street condo sale.[53] Ricchetti then makes an offer to Killian. Ricchetti offers, "when the Pine is clear title we form an LLC with an equal partnership of 50% and [w]e do so only the develop that property as planned with 10 or more units, 6 floors and retail bottom. We both agree that we have no there [sic] plans but to develop that property this year, and cost are equal for us, as well as profit when we agree to sell. We both have rights to see and obtain all cost information records related to 2nd and [B]rown. If one of us is found and proven stealing from the other or the business the[y] [l]ose their half of the property."[54]

On February 20, 2012, Killian unconditionally accepts Ricchetti's offer by writing "OF COURSE" directly next to Ricchetti's s proposal.[55] Killian also answers Ricchetti's questions about the Pine Street condo mortgage and tells Ricchetti he is waiting for Prudential's attorney,

9

the lender for Pine Street, to get back to him so they can close on the Pine Street condo mortgage.[56]

The February 19th and February 20th e-mails evidence a meeting of the minds on the defined terms. Ricchetti and Killian agree they will have a deal when Ricchetti receives clear title to Killian's Pine Street condo. Once Ricchetti receives clear title, Ricchetti and Killian agree they will form a partnership shared fifty/fifty to develop 2nd and Brown Street. They agree developing 2nd and Brown Street is the only project for their partnership this year and both Ricchetti and Killian will share profits, costs, and an equal right to see financial information. Ricchetti and Killian also agreed if one partner is proven to have stolen from the partnership, he will lose his share of the partnership.

Ricchetti and Killian's agreement is based on the condition precedent of Ricchetti receiving clear title on Killian's Pine Street condo. Ricchetti's offer opens with, "when the Pine is clear title."[57] The parties do not dispute Ricchetti never received clear title to Killian's Pine Street condo because of Wells Fargo's unexpected intransigence.[58] There is no evidence either party interfered with performing the condition precedent. Because the condition precedent never occurred, the contract never matured and the parties' duty to perform under the contract never arose.[59]

### B. There are genuine issues of material fact precluding summary judgment on Killian's promissory estoppel, unjust enrichment, and *quantum meruit* claims.

Material issues of fact regarding Killian's promissory estoppel/detrimental reliance, unjust enrichment, and *quantum meruit* claims preclude summary judgment. These issues concern whether Ricchetti made promises to Killian regarding the co-development of 2nd and Brown Street. Even before the February 2012 contract negotiations, Ricchetti proposed a partnership with Killian to develop 2nd and Brown Street and already Ricchetti refers to Killian

10

as his partner is an email to a commercial real estate broker.[60] After the February 2012 contract negotiations, both Ricchetti and Killian acted based on their negotiations. Ricchetti purchased the senior mortgage on Killian's Pine Street condo and attempted to foreclose on it and Killian, through his wife, does not contest the foreclosure, a term discussed in Killian's February 8, 2012 e-mail. Killian and Ricchetti worked jointly with an architect and an attorney to get the zoning permits for 2nd and Brown Street. Killian undertakes efforts to get a concrete proposal, a window proposal, and an architectural proposal for 2nd and Brown Street. Killian sends Ricchetti updates about interactions with the Philadelphia Streets Department, zoning code parking requirements for 2nd and Brown Street and Ricchetti likewise sends Killian updates about his work for the property. Ricchetti even sends an e-mail to Killian stating "I could have not done it without you and Chris."[61]

### 1. We deny summary judgment on Killian's promissory estoppel claim.

The elements of promissory estoppel are "(1) the promisor made a promise that [it] should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise."[62]

There are genuine issues of material fact whether: (1) Ricchetti made a promise to Killian to co-develop 2nd and Brown Street; and (2) if Killian did not contest the foreclosure of the Pine Street condo, acquired proposals, and worked with the attorney, architect, and zoning board for 2nd and Brown Street in reliance on Ricchetti's promise. Because we find genuine issues of material fact regarding whether Ricchetti made a promise to Killian we deny summary judgment on Count II.

### 2. We deny summary judgment on Killian's unjust enrichment and *quantum meruit* claims.

Killian alleges unjust enrichment and *quantum meruit* claims based solely on promises related to Ricchetti's 2nd and Brown Street property. We consider unjust enrichment and *quantum meruit* together because "a plaintiff must prove the same elements for *quantum meruit* and unjust enrichment."[63] To prove unjust enrichment, Killian must prove: "[1] benefits conferred on defendant by plaintiff, [2] appreciation of such benefits by defendant, and [3] acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."[64]

There are genuine issues of material fact whether Killian's work for Ricchetti's 2nd and Brown Street vacant lot conferred a benefit on Ricchetti. Killian acquired proposals and worked with the attorney, architect, and zoning board on the 2nd and Brown Street project. Ricchetti e-mailed to Killian, "I could have not done it without you and Chris."[65] Because we find genuine issues of material fact regarding whether Killian's work on behalf of Ricchetti's 2nd and Brown Street conferred benefits on Ricchetti, we deny summary judgment on the unjust enrichment and *quantum meruit* claims.

### III. Conclusion

We grant Ricchetti's motion for summary judgment as to Killian's breach of contract claim as a matter of law. Given the several genuine issues of material fact concerning reliance on specific promises and damages, we deny Ricchetti's motion for summary judgment on Killian's promissory estoppel, unjust enrichment, and *quantum meruit* claims.

---

[1] ECF Doc. No. 21-2 ¶ 11.

---

[2] *Id.* ¶¶ 1, 6.

[3] *Id.* ¶¶ 15-23.

[4] ECF Doc. No. 21-8 at 6.

[5] *Id.* at 8.

[6] *Id.* at 9-10, 13.

[7] ECF Doc. No. 22-7 at 60.

[8] ECF Doc. No. 21-2 ¶ 36.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* ¶ 39.

[14] *Id.*

[15] *Id.*

[16] ECF Doc. No. 21-8 at 20.

[17] *Id.* at 19.

[18] *Id.*

[19] *Id.*

[20] ECF Doc. No 21-2 ¶41.

[21] *Id.* ¶44.

[22] *Id.* ¶45.

[23] *Id.* ¶¶41-42.

[24] ECF Doc. No. 22-8 at 43.

[25] *Id.* at 16.

[26] ECF Doc. No 21-2 ¶47.

[27] *Id.*

[28] ECF Doc. No. 22-5 at 50-51.

[29] ECF Doc. No. 22-7 at 77.

[30] *Id.* at 81.

[31] *Id.* at 82.

[32] ECF Doc. No. 22-5 at 8.

[33] *Id.* at 12-15.

[34] ECF Doc. No 22-8 at 52.

[35] ECF Doc. No. 22-7 at 84.

[36] *Id.*

[37] ECF Doc. No. 22-8 at 57.

[38] ECF Doc. No. 22-7 at 87.

[39] ECF Doc. No. 22-9 at 28.

[40] *Id.* at 3.

[41] ECF Doc. No. 22-8 at 73.

[42] ECF Doc. No 21-2 ¶48-49.

[43] "A court should grant summary judgment 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law'…In considering a motion for summary judgment, 'the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor.'" *Quandry Solutions, Inc. v. Verifone, Inc.*, No. 07-97, 2009 WL 997041 at *5 (E.D.Pa. Apr. 13, 2009).

[44] *Boyd v. Cambridge Speakers Series, Inc.*, No. 09-4921, 2010 WL 254551 at *5 (E.D.Pa. June 18, 2010)(*citing Quandry Solutions*, 2009 WL 997041 at *5.

[45] *Quandry Solutions*, 2009 WL 997041 at *9.

[46] *Id.* (internal citations omitted).

[47] ECF Doc. 21-2 ¶ 36.

[48] *Id.*

[49] *First Home Sav. Bank, FSB v. Nernberg*, 648 A.2d 9, 15 (Pa. Super. 1994)(internal citations omitted).

[50] ECF Doc. 21-2 ¶ 39.

[51] *Rich v. G.W. Pifer Sons*, 100 Pa.Super. 483, 487 (Pa. Super. 1930).

[52] *Keystone Technology Group, Inc. v. Kerr Group, Inc.*, 824 A.2d 1223, 1227-1228 (Pa. Super. 2003)(*citing Acme Markets, Inc. v. Federal Armored Express, Inc.*, 648 A.2d 1218, 1220 (Pa. Super. 1994)).

[53] ECF Doc. No. 21-8 at 20.

[54] *Id.* at 19.

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] ECF Doc. No. 225 at 50-51.

[59] *Keystone*, 824 A.2d at 1227-1228 (*citing Acme*, 648 A.2d at 1220).

[60] ECF Doc. No. 22-7 at 60.

[61] *Id.* at 87.

[62] *V-Tech Services, Inc. v. Street*, 72 A.3d 270, 276 (Pa. Super. 2013).

[63] *Burton Imaging Group v. Toys "R" Us, Inc.*, 502 F. Supp. 2d 434, 440 (E.D.Pa. 2007)(*citing Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir. 2000)).

[64] *Quandry Solutions*, 2009 WL 997041 at *16. (internal citations omitted).

---

[65] *Id.* at 87.